NORTHERN STATES POWER
COMPANY, Respondent,

v.

CITY OF GRANITE FALLS, Appellant (C5–90–1355) Respondent (C2–90–1524),

MN FAIR, Intervenor, Respondent (C5–90–1355) Appellant (C2–90–1524).

Nos. C2–90–1524, C5–90–1355.

Court of Appeals of Minnesota.

Dec. 4, 1990.

Review Denied Jan. 14, 1991 for City of Granite Falls.

Review Denied Jan. 24, 1991 for MN Fair.

Gregory L. Holmstrom, Granite Falls City Atty., Spencer H. Kvam, Asst. City Atty., Reishus, Holmstrom & Kvam, Granite Falls, Carla C. Kjellberg, St. Louis Park, for appellant.

Larry D. Espel, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondent.

Considered and decided by SCHUMACHER, P.J., PARKER and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

Northern States Power Company (NSP) commenced an action against the City of Granite Falls, seeking declaratory and injunctive relief to bar the enforcement of Granite Falls Ordinance No. 12, 2d Series (December 14, 1989). NSP moved for summary judgment. MN FAIR, a nonprofit citizen group, intervened in the action.

The trial court granted NSP's motion for summary judgment, thereby declaring the ordinance invalid and enjoining the city from enforcing it. The city and MN FAIR appeal. We affirm.

## FACTS

NSP's Minnesota Valley power plant located in Granite Falls, Minnesota, is a coal-fired electrical generating facility. At this plant NSP stores approximately 1,500,000 gallons of mineral oil dielectric fluid (MODEF) which contains polychlorinated biphenyl (PCBs).

In an effort to dispose of the MODEF, NSP applied in June 1986 to the Minnesota Pollution Control Agency (MPCA), Division of Air Quality, for a permit amendment allowing it to burn a mixture of coal and MODEF at their Granite Falls plant. The MPCA granted NSP's request by issuing Amendment No. 4 to NSP's Air Emission Facility Permit No. 202M–85–OT–1 for an emission facility and air pollution control equipment. This permit amendment expired September 27, 1990.

After NSP applied for the amendment to burn MODEF and before the MPCA issued it, the City of Granite Falls enacted Ordinance No. 12, 2d Series, "An Ordinance Regulating Hazardous Waste and Hazardous Waste Treatment Facilities."

The city enacted the ordinance to "assure proper management and disposition of [hazardous waste] materials." Ord. No. 12, 2d, § 1. The nine-page ordinance prohibits outside storage of hazardous waste and allows all hazardous waste facilities to operate "only as a conditional use within the I–2 General Industry Zoning District." Ord. No. 12, 2d, § 2. It broadly defines "hazardous waste facility" as

a building, structure, or use of land devoted, or intended to be devoted to changing by any method, technique or process, including neutralization, the physical, chemical or biological character of any waste material, so as to neutralize such material or render it non-hazardous, safer for transport, amenable for recovery, storage or reduced in bulk.

The ordinance sets detailed conditional use requirements, approval criteria and application procedures for hazardous waste facilities, including the following:

[T]he proposed hazardous waste facility [may] be located no closer than 1,500 feet of any flood plain, shoreland, wetland, body of water, or ground water recharge area or aquifer, in order to protect potential drinking water sources.

## ISSUE

Does the City of Granite Falls have authority to regulate hazardous waste and hazardous waste treatment facilities?

## DISCUSSION

This case does not involve issues of fact but, rather, involves statutory interpretation, which is an issue of law. Thus, this court need not defer to the trial court's decision. *See Durfee v. Rod Baxter Imports Inc.*, 262 N.W.2d 349, 354 (Minn. 1978).

■ As a starting point for our analysis, we note that municipalities have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred. *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 357, 143 N.W.2d 813, 820 (1966).

### I

The city argues that Minn.Stat. § 116.07, subd. 4 (1990), and Minn.R. 7045.0070 (1989) enable local governments to impose regulations regarding hazardous waste facilities and the emissions generated. The intervenor argues that the doctrine of conflict, not preemption, applies to this case and that the ordinance does not conflict with Minn.Stat. § 116.07, subd. 4, or Minn.R. 7045.0070.

While both the city and the intervenor rely on subdivision 4 and the Minnesota rule, NSP argues that section 116.07, subd. 2, preempts the ordinance. NSP further claims that the legal analysis in *State v. Apple Valley Redi–Mix, Inc.*, 379 N.W.2d 136 (Minn.App.1985), controls this case.

After acknowledging the public policy issues, the trial court concluded that the regulating function under Minn.Stat. § 116.07, subd. 2, preempts the field covered by the ordinance. He reasoned that Minn.Stat. § 116.07, subd. 4, does not apply to the ordinance:

> [This ordinance] does not set any quantifiable air quality standards. The only provision in that ordinance which could be conceived to be a quantifiable standard applicable to the facts in this case is the 1,500 foot limitation on hazardous waste facilities. [The city and intervenor] have shown no rational connection

between that limitation and emission regulations.

The trial judge agreed with NSP that Minn. Stat. § 116.07, subd. 2, preempts the field:

> The Legislature and the MPCA have not delegated any of MPCA's administrative authority to the Granite Falls City Council or related and subordinate city agencies. The City of Granite Falls and its related and subordinate agencies have no authority to regulate hazardous waste except as is provided by Minnesota Law.

### II

We agree with the trial court as to Minn. Stat. § 116.07, subd. 4. This subdivision provides:

> As to any matters subject to this chapter, local units of government may set emission regulations with respect to stationary sources which are more stringent than those set by the pollution control agency.

The ordinance in question is not an emission regulation with respect to stationary sources. It is an ordinance to govern generally the proper management and disposition of hazardous waste materials. *See* Ord. at § 1. The city has authority to *set emission regulations* for stationary sources more stringent than those set by the MPCA, but this ordinance does not treat that subject.

### III

We disagree with the trial court's application of the preemption doctrine, but affirm the trial court's decision based on the doctrine of conflict. *See Liebsch v. Abbott*, 265 Minn. 447, 457, 122 N.W.2d 578, 585 (1963) (if the trial court's decision is correct, the appellate court can sustain it for a different reason).

In *Mangold* the Minnesota Supreme Court stated:

> Although some cases have confused the two and even used them interchangeably, it is our position that preemption and conflict are separate concepts and should be governed by separate doctrines.

*Id.*, 274 Minn. at 356, 143 N.W.2d at 819. In *Mangold* the court defined preemption

as the " 'occupation of the field' concept, and is familiar in drawing the line between state and Federal powers." *Id.*, 274 Minn. at 356, 143 N.W.2d at 819. Preemption is based on reasoning such as the following:

> [A] state law may fully occupy a particular field of legislation so that there is no room for local regulation, in which case a local ordinance attempting to impose any additional regulation in that field will be regarded as conflicting with the state law, and for that reason void, even though the particular regulation set forth in the ordinance does not directly duplicate or otherwise directly conflict with any express provision of the state law.

*Id.* at 356, 143 N.W.2d at 819 (quoting *People v. Commons*, 64 Cal.App.2d Supp. 925, 930, 148 P.2d 724, 727 (1944).

The preemption doctrine does not govern this case, because the state has not fully occupied the field of hazardous waste regulation. The Minnesota legislature has authorized counties to undertake hazardous waste programs subject to the approval of the MPCA. *See* Minn.Stat. §§ 400.161, 473.811 (1990).

The legislature has also granted local governments some authority concerning hazardous waste regulation in Minn.Stat. § 116.07, subd. 2. The legislature enabled the MPCA to set standards of hazardous waste control in Minn.Stat. § 116.07, subd. 2 (1990), which provides:

> No local government unit shall set standards of hazardous waste control which are in conflict or inconsistent with those set by the pollution control agency.

This provision grants local governments *limited* authority to set standards of hazardous waste control. Minn.Stat. § 645.19 (1990) provides in part material:

> Provisos shall be construed to limit rather than to extend the operation of clauses to which they refer.

Thus, we must interpret the statute to limit rather than to extend.

In Minn.R. 7045.0070, part of the "Hazardous Waste" chapter, the MPCA specified the effect of other hazardous waste standards:

> Nothing in this chapter shall relieve any person from any obligations or duties imposed by any other laws, statutes, rules, standards, or ordinances of the federal, state, or local governments or any agency thereof now in effect or which become effective in the future. In the event this chapter conflicts with any such laws, statutes, rules, standards, or ordinances, *the more stringent shall apply.*

(Emphasis added). Rule 7045.0070 purports to grant local governments authority to impose obligations or duties as to hazardous waste more stringent than those imposed by the MPCA, but Minn.Stat. § 116.07, subd. 2, does not allow this. Contrary to the rules of statutory construction, the rule seeks to extend, rather than limit, the operation of a proviso.

We recognize that the grant of authority to local governments is narrow; nevertheless, this authority, together with the authority delegated to county governments, provides some room for local regulation. Therefore, we conclude, the preemption doctrine is not applicable to this ordinance.

The conflict doctrine applies to the ordinance by the explicit language of Minn. Stat. § 116.07, subd. 2. *See Apple Valley Redi–Mix*, 379 N.W.2d at 138 (applying conflict doctrine to Minn.Stat. § 116.07, subd. 2 (1984)). The *Mangold* court established the general principles for determining whether an ordinance conflicts with a statute:

> (a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.

> (b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids. * * *

> (c) Conversely, a conflict exists where the ordinance forbids what the statute expressly permits. * * *

> (d) It is generally said that no conflict exists where the ordinance, though different, is merely additional and comple-

mentary to or in aid and furtherance of the statute.

*Id.*, 274 Minn. at 352, 143 N.W.2d at 816–17.

In *Apple Valley Redi–Mix* this court applied the *Mangold* principles to determine that an air pollution, nuisance ordinance, which did not describe any quantifiable air quality standard, conflicted with the standards set forth in the MPC Act. *Id.*, 379 N.W.2d at 138. Minn.Stat. § 116.07, subd. 2, addresses air quality standards:

No local government unit shall set standards of air quality which are more stringent than those set by the pollution control agency.

Because the ordinance could set a more stringent air quality standard than the MPCA, it violates the *Mangold* principles and the statutory limitation of subdivision 2.

The *Apple Valley Redi–Mix* court stated:

The ordinances do not describe any quantifiable air quality standard. The ordinances could set a more stringent air quality standard than the Minnesota Pollution Control Agency, thereby violating both the *Mangold* principle and the statutory mandate in Minn.Stat. § 116.07, subd. 2.

*Id.*, 379 N.W.2d at 139.

■ Moreover, the *Mangold* principles establish a conflict between the ordinance and subdivision 2. The ordinance and the statute contain irreconcilable express and implied terms: For example, on its face the ordinance prohibits the application of Amendment No. 4 to the existing NSP facility by its 1,500–foot rule. The setback requirement is inconsistent and conflicts with the MPCA permit. The statute forbids a local government from enacting rules that conflict with the MPCA standards for hazardous waste control.

The ordinance is not merely additional or complementary to or in aid and furtherance of the statute. The city has attempted to use its zoning authority to enact a comprehensive plan of regulating the siting operation of a hazardous waste treatment facility for which the city has no legislative authority. We agree with the trial court's conclusion that

the City's action in this instance did not amount to setting a quantifiable standard for protection of its area. Instead the City set up what amounted to a separate government agency, independent of the State of Minnesota, an action prohibited by law.

Because the ordinance conflicts with the statute, the injunction against enforcement must be upheld.

## IV

■ The siting process for large electric power facilities is a field preempted by state law, and the process includes public hearings, information meetings, appointment of a site evaluation committee and criteria for site evaluation, among other things. *See* Minn.Stat. § 116C.55, subd. 2 (1990); Minn.R. 4400.0200–.4900 (1989). We recognize the local fear that while the siting process may allow a relatively innocuous use such as a power plant to be established, the state may, at a later time without the protections of the original siting process, authorize a more controversial use such as the disposal of hazardous waste. Citizens may well feel they have not been properly consulted and natural apprehensions will not have been assuaged. The legislature has recently addressed this fear.

■ While NSP's motion for summary judgment was under the trial court's consideration, the Minnesota legislature enacted Minn.Stat. § 116.38, subds. 1 and 2 (1990), which address the burning of PCBs. Subdivision 1 states:

The legislature finds that risks to human health must be adequately evaluated before a facility may burn PCBs. The legislature also finds that if there is a risk to human health, all human health must be treated with equal concern, and facilities that cause risks to human health must not be allowed to operate in sparsely populated areas if they would not be allowed to operate in heavily populated areas.

Subdivision 2 requires completion of an environmental impact statement before the MPCA may allow the burning of waste which contains 50 ppm or greater of PCBs.

The parties agreed at oral argument that because NSP's permit has expired and it must seek an extension, the new legislation requiring an environmental impact statement will apply.

### DECISION

We affirm the trial court's orders (1) enjoining the City of Granite Falls from enforcing Ordinance No. 12, 2d Series, against NSP; and (2) declaring this ordinance invalid.

Affirmed.