**BOARD OF SUPERVISORS OF CROOKS TOWNSHIP, RENVILLE COUNTY, Minnesota, Appellant,**

v.

**VALADCO, Respondent.**

No. C5-93-155.

Court of Appeals of Minnesota.

Aug. 10, 1993.

Review Denied Sept. 30, 1993.

J. Brian O'Leary, O'Leary and Moritz, Chartered, Springfield, for appellant.

Gary W. Koch, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent.

John P. Dooley, St. Michael, for amicus curiae Minnesota Ass'n of Townships.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and HOLTAN,* JJ.

## OPINION

HARVEY A. HOLTAN, Judge.

A township appeals from summary judgment prohibiting enforcement of its ordinance regulating pollution from animal feedlots. We affirm the district court's decision that the ordinance is preempted by and in conflict with Minn.Stat. § 116.07, subd. 7 (1992).

## FACTS

ValAdCo, a cooperative of thirty-eight farm families, sought state and county approval to build two hog confinement facilities on land zoned for agricultural uses in Crooks Township. The Renville County Board of Commissioners approved permits for both sites.

The Minnesota Pollution Control Agency (MPCA) prepared and distributed an Environmental Assessment Worksheet. During the public comment period, the MPCA received correspondence from local residents and state agencies.

The MPCA responded to concerns expressed about ground water availability and contamination, and odors. The MPCA

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

concluded that the ValAdCo project as modified during the review process did not have the potential for significant environmental effects and did not require an Environmental Impact Statement. The MPCA issued the feedlot permits and the Department of Natural Resources issued a water appropriation permit.

After application but prior to approval and issuance of the county and MPCA permits, Crooks Township enacted Ordinance No. 1991–1. The ordinance requires anyone desiring to operate an animal feedlot or livestock sewage lagoon to obtain a permit from the township. ValAdCo never applied for a township permit.

After ValAdCo obtained the county and MPCA permits and began construction, Crooks Township sought declaratory and injunctive relief to prohibit construction of the hog confinement facilities. The district court denied injunctive relief and granted summary judgment for ValAdCo, finding the ordinance invalid because it was preempted by and in conflict with Minn. Stat. § 116.07, subd. 7. Crooks Township appeals.

## ISSUE

Is the Crooks Township ordinance preempted by or in conflict with Minn.Stat. § 116.07, subd. 7 (1992)?

## ANALYSIS

■ The Minnesota Supreme Court has defined preemption as the "occupying the field" concept. *Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). A state law may fully occupy a particular field of legislation so that there is no room for local regulation. *Id.* If a local ordinance attempts to impose additional regulation in that field it is void, even if it does not duplicate or directly conflict with any express provision of the state law. *Id.*

■ Four questions are relevant to determining whether there is preemption:

(1) What is the subject matter being regulated?

(2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern?

(3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern?

(4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general population?

*Id.* at 358, 143 N.W.2d at 820.

■ The subject matter of the ordinance is the control of pollution from manure produced in animal feedlots. That is the very subject regulated under state law by Minn.R. 7020.0100–.1900 (1991) promulgated to comply with state pollution control policies expressed in Minn.Stat. chapters 115 and 116. We are convinced that the nature of this subject matter as well as the comprehensive statutory scheme demonstrates the legislature's intent to preempt local enactments on this subject.

Pollution by its very nature is difficult to confine to particular geographical areas. For that reason the state has set up a statutory structure for issuing animal feedlot permits that provides for local input but retains ultimate control in the state. This promotes uniform interpretation and application of state rules and allows the state to take into account the environmental and economic welfare of the state as a whole.

The breadth of the statutory scheme is demonstrated by the thorough review undertaken by the MPCA. The MPCA permit application required ValAdCo to provide information on the number and type of animals to be confined; the location of the feedlot; soil and hydrogeological conditions; a map or aerial photograph of all wells, buildings, lakes and watercourses within 1,000 feet of the proposed feedlot; a manure management plan, including handling and application techniques, acreage available for manure application, and plans for any manure storage structure; and any additional site-specific or project-specific information requested by the MPCA. Minn.R. 7020.0500, subpt. 2 (1991).

Next the MPCA completed an Environmental Assessment Worksheet (EAW) and solicited public comment pursuant to Minn.R. 4410.1000–.1700 (1991). The MPCA received letters from 37 local residents, the Department of Natural Resources (DNR), the Minnesota Historical Society, and the Minnesota Department of Health concerning odors and ground water availability and contamination. The MPCA specifically responded to the comments and addressed the concerns in its findings and conclusions.

After pumping tests were conducted, the DNR concluded that ValAdCo's project would not jeopardize ground water supplies. The MPCA approved ValAdCo's manure management plan, which included provisions for waste and soil testing, a 100–foot setback between any residence and landspreading operation, sewage lagoon linings that meet MPCA guidelines, and MPCA-recommended setbacks from residences and surface waters when applying wastes.

The MPCA also approved ValAdCo's proposed measures to minimize odor problems. The agency noted that landspreading of animal wastes is very common in the area around the ValAdCo sites and that the odors from its project should not be any worse than those from existing operations.

The MPCA issued the permits based on information specific to the ValAdCo project as well as its experience in monitoring similar facilities in the state. It stated:

[T]he nature of the project has been fully examined and all significant environmental effects have been identified and evaluated. The potential environmental effects have also been evaluated in previous environmental review of similar projects, and have been found to be subject to effective regulatory controls.

The MPCA also noted that the ValAdCo operation would be subject to continued monitoring by state agencies.

In the midst of the MPCA review process, Crooks Township enacted its own ordinance with different pollution control requirements for animal feedlots. The ordinance requires anyone who wants to maintain a feedlot or livestock sewage lagoon to obtain a township permit in addition to the county and state permits. Facilities already in existence on the date of enactment are exempt from its provisions. The ordinance contains guidelines for waste application rates and establishes setback distances for sewage lagoons. It also requires anyone constructing a sewage lagoon to file a surety bond or cash with the township board of supervisors. The parties stipulated that the bond required of ValAdCo would total $1,350,000 for the two sites. Any violation of the ordinance is a misdemeanor, and each day any violation continues constitutes a separate offense.

The ordinance's bond requirement presents an issue somewhat different from the setback requirements. In contrast to the MPCA's thorough evaluation of the sewage lagoon and manure application issues, there is no indication that the MPCA considered requiring a bond or making other arrangements to cover costs of cleaning up any spills or of closing the facilities if ValAdCo turns out to be financially irresponsible. A bond is not, strictly speaking, a measure to control pollution from animal feedlots. Rather, it is a way to hold owners financially responsible, in advance, for pollution that may occur in the future.

Nonetheless, we view the absence of a bond requirement in the statutory scheme for issuing animal feedlot permits as an indication of the legislature's judgment that the MPCA application review process provides adequate protection to the public and the environment. The statutory provisions reflect the balance struck by the legislature between the need to control pollution from manure, and the desire to foster a healthy agricultural economy. *See* Minn.R. 7020.0100 ("An adequate supply of healthy livestock, poultry, and other animals is essential to the well-being of Minnesota citizens and the nation. * * * [A] joint county-state program is desirable because it will insure local involvement, minimal disruption to agricultural operations and protect the environment from further degradation.").

We are not persuaded by Crooks Township's argument that its ordinance must be upheld because it regulates the health and safety of the people and environment of the township. The township cites Minn.Stat. § 365.10, subd. 17 (1992) as authority for its ordinance. That statute allows town voters to grant the town board the authority to provide for specific activities within certain categories, such as the protection of public and private property, the promotion of health, safety, order, and convenience, and the general welfare. *Id.*, subd. 17(d), (f), (g).

The fact that health and safety concerns provided the motivation for enacting the ordinance does not make the ordinance valid. Although municipalities have the power to regulate in the interest of public health, safety, and welfare, a township cannot invoke "police power" to accomplish what is otherwise preempted by state statute. *Minnesota Agric. Aircraft Ass'n v. Township of Mantrap*, 498 N.W.2d 40, 43 (Minn.App.1993); *see also City of Minnetonka v. Mark Z. Jones Assoc.*, 306 Minn. 217, 236 N.W.2d 163 (1975) (state building code preempts city construction ordinance to the extent the ordinance purports to adopt more stringent fire prevention measures concerning design and construction of buildings).

If every township were allowed to set its own pollution control conditions, the result could be a patchwork of different rules. Compliance with varying local rules would be burdensome and would have a detrimental effect on the efficient operation of the state's agricultural industry.

We also reject the township's argument that state pollution control laws themselves specifically authorize the type of ordinance enacted here. The township points to language in Minn.R. 7020.0100 that "[i]n repealing the old rules controlling pollution from animal feedlots * * *, the agency will look to local units of government to provide adequate land use planning for residential and agricultural areas. It has been the agency's experience that residential and agricultural uses of land are often incompatible and that the best forum for resolving the conflicting use of land is at the local level. However, in promulgating these rules the agency does not seek to abdicate its mandate * * *."

Contrary to the township's position, this language focuses only on the local government's designation of land as residential or agricultural. It says that local government is the best forum for resolving conflicts over the best *type of use* for land. It does not express the intention that, once land has been properly zoned for agricultural use, local government may impose specific requirements on the construction and operation of animal feedlots.

Furthermore, Minn.R. 7020.0100 specifically discusses a cooperative program between the MPCA and *counties*. It refers to "local" input in the context of county actions. The rule notes that "a joint county-state program is desirable because it will insure local involvement." The counties' role in processing animal feedlot applications is set forth in detail in Minn.Stat. § 116.07, subd. 7 and Minn.R. 7020.1500–.1900 (1991). In all cases the MPCA retains ultimate reviewing authority over county decisions.

Crooks Township wrongly relies on *Wisconsin Public Intervenor v. Mortier*, —— U.S. ——, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) to support its position. In *Mortier,* the Supreme Court held that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) did not occupy the field of pesticide regulation and that the particular local ordinance did not conflict with FIFRA. *Id.* at ——, 111 S.Ct. at 2485–87. However, the Court had no occasion to discuss state law preemption; the state supreme court had not addressed state law preemption because of its decision that the federal statute preempted the local ordinance. *Id.* at ——, 111 S.Ct. at 2481. Moreover, the fact that one local ordinance is not preempted by federal statute does not help resolve whether another local ordinance that deals with different subject matter is preempted by a state statute.

Finally, we find the ordinance not only preempted by state law but also in

conflict with it. The Minnesota Supreme Court distinguishes the preemption doctrine of "occupying the field" from the doctrine of "conflict," under which a local ordinance is invalid only if the express and implied terms of the ordinance and the state statute are irreconcilable. *Mangold,* 274 Minn. at 352, 356, 143 N.W.2d at 816, 819.

■ The ordinance conflicts with state law because its setback requirements would prohibit construction of the ValAdCo facilities, which the MPCA and county have already approved. *See NSP v. City of Granite Falls,* 463 N.W.2d 541, 545 (Minn. App.1990), *pet. for rev. denied* (Minn. Jan. 14 & 24, 1991); *State v. Apple Valley Redi-Mix, Inc.,* 379 N.W.2d 136, 139 (Minn. App.1985). The ordinance's fixed setback requirements run contrary to the MPCA's focus on site- and project-specific determinations of what are appropriate pollution control measures. The ordinance is not merely complementary to and in furtherance of state regulations. ValAdCo could be in compliance with MPCA requirements yet be prosecuted under the local ordinance.

We recognize that local communities have important concerns about pollution and the extent to which they can impose their own regulations. The legislature could help eliminate uncertainty and forestall litigation by explicitly stating when particular legislation preempts local regulations. *See Minnesota Agric. Aircraft Ass'n,* 498 N.W.2d at 42 (statute expressly preempts local ordinances). The fact that the legislature explicitly preempts local enactments in one statute but not in another can raise doubts about whether preemption is intended in the latter case. Nonetheless, we are persuaded here that the nature of the matter regulated, together with the comprehensive statutory scheme, evidence the legislature's intent to preempt local regulation of pollution from animal feedlots.

## DECISION

A local ordinance regulating pollution from animal feedlots is preempted by and in conflict with Minn.Stat. § 116.07, subd. 7. We affirm the district court's grant of summary judgment finding the ordinance invalid.

Affirmed.