**BLUE EARTH COUNTY PORK PRODUCERS, INC.,**
Appellant,

v.

**COUNTY OF BLUE EARTH,**
Respondent.

No. C1–96–1222.

Court of Appeals of Minnesota.

Jan. 28, 1997.

Review Denied March 26, 1997.

Gary W. Koch, Michael S. Dove, Gislason, Dosland, Hunter & Malecki, P.L.L.P., New Ulm, for Appellant.

Ross E. Arneson, Blue Earth County Attorney, Mankato, for Respondent.

Daniel J. Greensweig, Kennedy & Graven, Minneapolis, for amicus curiae Minnesota Center for Environmental Advocacy.

Thomas P. Harlan, Minneapolis, for amicus curiae National Wildlife Federation.

James R. Andreen, Erstad & Riemer, P.A., Minneapolis, for amicus curiae Association of Minnesota Counties.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and HARTEN, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Blue Earth County Pork Producers, Inc. challenges the district court's grant of summary judgment in favor of respondent County of Blue Earth, contending the district court erred in determining the County's ordinance was not (1) preempted by state law; (2) in conflict with state law; or (3) arbitrary and capricious.

## FACTS

The County of Blue Earth (County) passed the Livestock Manure Management Ordinance (Ordinance) on January 4, 1994, to become effective on January 1, 1995. The Ordinance contains several provisions not present in state law. Specifically, the Ordinance mandates setbacks and perimeter tile monitoring not required by state law, and contains a three-year permit limitation and bond requirement not present in state law.

On May 24, 1994, the staff of the Minnesota Pollution Control Agency (MPCA) recommended that the MPCA approve County's

application for approval to process state feedlot permit applications. The staff made its recommendation after reviewing the Ordinance and determining that it did not conflict with state feedlot rules. The staff's recommendation was adopted by the MPCA board and County was given the authority to process feedlot permits.

After the Ordinance became effective, Blue Earth County Pork Producers, Inc. (Producers) filed a declaratory judgement action seeking to have the Ordinance declared invalid. Producers obtained a temporary restraining order, but its subsequent motions for an injunction and summary judgment were denied. The district court granted County's motion for summary judgment, determining the Ordinance was not preempted by state law, was not in conflict with state law, and was not arbitrary and capricious.

## ISSUES

1. Is the Blue Earth County Livestock Manure Management Ordinance preempted by state law?

2. Does the Blue Earth County Livestock Manure Management Ordinance conflict with state law?

3. Is the Blue Earth County Livestock Manure Management Ordinance arbitrary and capricious?

## ANALYSIS

On appeal from summary judgment, a reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). In making its determinations, the court must view the evidence in the light most favorable to the nonmoving party. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn. 1994). No deference need be given to the district court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Statutory interpretation presents a question of law, which an appellate court reviews de novo. *Hibbing Educ. Ass'n v. Public Em-*

*ployment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

### I.

■ The Minnesota Supreme Court has described preemption as the "occupying the field" concept. *Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). A state law may fully occupy a particular field of legislation so that there is no room for local regulation. *Id.* If a local ordinance attempts to impose additional regulation in that field it is void, even if it does not duplicate or directly conflict with any express provision of the state law. *Id.*

■ Four questions are relevant to determining whether a particular subject matter has been preempted:

(1) What is the subject matter being regulated?

(2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern?

(3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern?

(4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general populace?

*Board of Supervisors v. ValAdCo,* 504 N.W.2d 267, 269 (Minn.App.1993) (citation omitted).

It is undisputed that the Ordinance regulates the same subject matter regulated by state law, namely, the control of pollution from manure produced in animal feedlots. The parties, however, disagree about whether the subject matter is so fully covered by state law that it is a matter solely of state concern.

■ In support of their argument that this area is fully covered by state law, Producers cites our decision in *ValAdCo. ValAdCo* involved a township that enacted an ordinance requiring anyone that wanted to operate an animal feedlot to obtain a township permit. In holding that the township ordinance was preempted by state law, we stated:

We are convinced that the nature of this subject matter as well as the comprehensive statutory scheme demonstrates the legislature's intent to preempt local enactments on this subject.

*Id.* at 269. Producers argues that local enactments include county ordinances. We disagree.

The statute and rules enacted pursuant to it specifically envision county involvement in feedlot regulation. Minn.Stat. § 116.07, subd. 7 (1996), allows counties to assume responsibility for processing animal feedlot permits, which County has done. It states:

> For the purposes of this subdivision, the term "processing" may include, at the option of the county board, issuing, denying, modifying, *imposing conditions upon,* or revoking permits pursuant to the provisions of this section or rules promulgated pursuant to it, subject to review, suspension, and reversal by the pollution control agency.

*Id.,* subd. 7(b) (emphasis added). Further, the animal feedlot rules state:

> These rules provide for a cooperative program between counties and the Minnesota Pollution Control Agency (hereinafter agency). County programs, in many instances, represent considerable experience and sensitivity to local agricultural practices and to successful soil and water conservation. Pollution control measures, where deemed necessary by the agency, should be individually designed and developed to provide the site specific controls needed for the operation in question. Therefore, a joint county-state program is desirable because it will insure local involvement, minimal disruption to agricultural operations, and protect the environment from further degradation.

Minn. R. 7020.0100 (1995). The rules also require counties, among other things, to designate a county feedlot pollution control officer who will

> receive and review completed application forms and conduct such inspections as necessary to determine if the proposed animal feedlot will comply with applicable state rules and *applicable local ordinances.*

Minn. R. 7020.1600, subp. 1(C)(3) (1995) (emphasis added).

In addition, in *ValAdCo* we recognized that counties are different from other local government units with regard to feedlot regulation:

> Minn. R. 7020.0100 specifically discusses a cooperative program between the MPCA and *counties.* It refers to "local" input in the context of county actions.

*ValAdCo,* 504 N.W.2d at 271.

Significantly, the MPCA has concluded that the Ordinance is not preempted by state law. The interpretation of the agency charged with enforcing a statute is entitled to great weight. *Minnesota Mining & Mfg. Co. v. State,* 289 N.W.2d 396, 400 (Minn.1979) (citing *Steere v. State, Dep't of Public Welfare,* 308 Minn. 390, 243 N.W.2d 112 (1976)). In a letter to the district court dated April 25, 1995, the Commissioner of the MPCA stated, with regard to the County's permit fee program:

> It does not appear that the Blue Earth County's decision to pay its costs through permit user fees is preempted by or in conflict with [the] MPCA's feedlot program.

With regard to the three-year permit limit, the Commissioner said:

> The County feedlot ordinance was adopted by locally elected officials and it does not appear that this provision is preempted by or in conflict with MPCA's feedlot program.

Further, "[i]n this case and with respect to the issues discussed above," the Commissioner stated, "the Blue Earth County feedlot ordinance is consistent with MPCA's feedlot regulatory program."

We conclude that by creating a state and county partnership, the legislature has indicated feedlot regulation is not a matter of solely state concern. The legislature has recognized that counties have an interest in this subject and that the cooperative efforts of the state and the counties are needed to "occupy the field" of feedlot regulation.

Finally, citing *ValAdCo,* Producers argues that if each county is allowed to place conditions on feedlot permits, the efficient opera-

tion of the state's agricultural industry and the general populace will be adversely affected. In *ValAdCo*, we stated:

If every township were allowed to set its own pollution control conditions, the result could be a patchwork of different rules. Compliance with varying local rules would be burdensome and would have a detrimental effect on the efficient operation of the state's agricultural industry.

*ValAdCo*, 504 N.W.2d at 271.

Again, we are not persuaded that arguments pertaining to feedlot regulation by townships apply to counties. As noted above, the legislature and the MPCA have specifically recognized a role for the counties in feedlot regulation. As quoted above, this role is based on the counties' expertise, experience, and "sensitivity to local agricultural practices." Thus, we defer to the Blue Earth County Board's determination that based on the unique local conditions, including the fact that the Minnesota River is one of the state's most polluted rivers, the conditions in the Ordinance are necessary. In addition, because the MPCA has the authority to require the same conditions that are contained in the Ordinance, we reject Producers' contention that livestock producers in Blue Earth County are placed at a competitive disadvantage because of the Ordinance.

In light of our review of the law and application of the appropriate factors, we conclude the district court did not err in determining that County is not preempted by state law from enacting a feedlot ordinance.

## II.

■ Although in some cases the doctrines of preemption and conflict have been used interchangeably, the supreme court has stated that they are distinct doctrines governed by different principles. *Mangold*, 274 Minn. at 356, 143 N.W.2d at 819. To determine whether an ordinance conflicts with a statute, a court must consider the following principles:

(a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.

(b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids. * * *

(c) Conversely, a conflict exists where the ordinance forbids what the statute expressly permits. * * *

(d) It is generally said that no conflict exists where the ordinance, though different, is merely, additional and complementary to or in aid and furtherance of the statute.

*Northern States Power Co. v. City of Granite Falls*, 463 N.W.2d 541, 544–45 (Minn.App. 1990) (citing *Mangold*, 274 Minn. at 352, 143 N.W.2d at 816–17).

■ Because the Ordinance imposes requirements stricter or in addition to those of state law, the question presented is whether the Ordinance forbids what state law expressly permits. Producers argues that the Ordinance conflicts with state law because of these additional requirements. We disagree.

First, this argument is contrary to the opinion of the MPCA. The MPCA staff reviewed the Ordinance when the County petitioned to assume responsibility for the feedlot program. After acknowledging the Ordinance contained several provisions that were not in the state rules, the MPCA staff stated:

State and local partnerships are an integral part of the MPCA's nonpoint source strategy. We have recognized the value of local leadership of efforts to protect water quality. We have also acknowledged that in some situations there may be a need for more accelerated or intense efforts to address a particular environmental problem in a given area. The Blue Earth County feedlot ordinance was adopted by locally elected officials, and does not conflict with state feedlot rules. As such, it is the staff's position that this request for delegation should be approved.

In addition, the Commissioner's letter to the district court stated that the Ordinance is "consistent with [the] MPCA's feedlot regulatory scheme." As noted previously, the interpretation of the agency charged with enforcing a statute is entitled to great weight.

*Minnesota Mining & Mfg. Co.,* 289 N.W.2d at 400.

Second, the complained-of provisions of the Ordinance do not forbid what the statute *expressly* permits. Rather, the Ordinance imposes additional terms in furtherance of the statute. For example, the MPCA suggests a particular setback while the Ordinance requires it. Although the Ordinance is different from state law, its terms are not inconsistent with the MPCA regulatory scheme and are not irreconcilable with state law.

Producers' reliance on *State v. Apple Valley Redi–Mix, Inc.,* 379 N.W.2d 136 (Minn. App.1985), is misplaced. In that case, a municipality passed an ordinance regulating air pollution despite a statute's prohibition that

> [n]o local government unit shall set standards of air quality which are more stringent than those set by the pollution control agency.

*Redi–Mix,* 379 N.W.2d at 138 (citing Minn. Stat. § 116.07, subd. 2 (1984)). Significantly, the statute and rules in the present case do not contain a similar prohibition.

Considering the MPCA's interpretation of the statute, and the language of the statute and Ordinance, we conclude the district court did not err when it determined the Ordinance did not conflict with state law.

### III.

Producers argues the Ordinance is arbitrary and capricious because it contains unreasonable requirements not mandated by state law. We disagree. The fact that the Ordinance includes requirements not mandated by state law does not alone make County's enactment of the Ordinance arbitrary and capricious.

In *Miller v. Foley,* 317 N.W.2d 710 (Minn.1982), the supreme court stated:

> When considering decisions of a governmental unit involving judgment and discretion, the court will not substitute its judgment for that of the governmental unit. If the reasonableness of the action of the governmental unit is "at least doubtful, or fairly debatable," the court will uphold the action.

*Id.* at 714 (citations omitted). Producers challenges several specific provisions in the Ordinance as being unreasonable. However, to establish the unreasonableness of the Ordinance, it is not enough to disagree with the appropriateness of requirements in the Ordinance or to speculate as to possible situations in which the requirements might be unfair or unnecessary. Producers has not provided, and the record does not contain, evidence establishing that the reasonableness of the County's actions is not "at least doubtful or fairly debatable." Therefore, we will not substitute our judgment for that of the County. Accordingly, we conclude the district court did not err when it determined that County's actions were not arbitrary and capricious.

### IV.

Producers has made a motion to strike materials in the brief of amici curiae Minnesota Center for Environmental Advocacy and National Wildlife Federation regarding the description of feedlots, and documents regarding the administrative history of the MPCA feedlot rules contained in the brief's appendix. The purpose of an amicus brief is to

> inform the court as to facts or situations which may have escaped consideration or to remind the court of legal matters which may have escaped its notice.

*State v. Finley,* 242 Minn. 288, 294–95, 64 N.W.2d 769, 773 (1954). We conclude the challenged materials are appropriate because they fulfill the above-mentioned purposes. The motion to strike is therefore denied.

### DECISION

We affirm the judgment of the district court that the Livestock Manure Management Ordinance enacted by the County of Blue Earth is not preempted by state law, in conflict with state law, or arbitrary and capricious.

**Affirmed, motion to strike denied.**