**CANADIAN CONNECTION, Appellant,**

v.

**NEW PRAIRIE TOWNSHIP, Respondent.**

No. C6–97–2134.

Court of Appeals of Minnesota.

July 14, 1998.

Review Denied Sept. 30, 1998.

Sherry A. Enzler, Doherty, Rumble & Butler, P.A., St. Paul; and Warrenn C. Anderson, Amy J. Doll, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chartered, Morris, for appellant.

Peter B. Tiede, C. Todd Koebele, Murnane, Conlin, White & Brandt, St. Paul, for respondent.

Hubert H. Humphrey III, Attorney General, Mathew B. Seltzer, Assistant Attorney General, St. Paul, for amicus curiae Minnesota Department of Agriculture.

Troy J. Gilchrist, St. Michael, for amicus curiae Minnesota Association of Townships.

Carla J. Heyl, St. Paul, for amicus curiae League of Minnesota Cities.

Mark F. Ten Eyck, Robert M. Hogg, St. Paul, for amicus curiae Minnesota Center for Environmental Advocacy.

Considered and decided by RANDALL, P.J., and KALITOWSKI and WILLIS, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant Canadian Connection contends the district court erred in determining respondent New Prairie Township's zoning ordinance, as it related to feedlots: (1) was not preempted by or in conflict with state law; and (2) was reasonable and supported by a rational basis.

## FACTS

Canadian Connection and Solvie Farms, Inc. (Solvies) are a general partnership that builds hog barns and a corporation responsible for the "crop side" of the hog farming operation. In 1993, the Solvies applied for and received a permit from the Minnesota Pollution Control Agency (MPCA) to build and operate a hog feedlot for 450 animal units on section 22 in respondent New Prairie Township (township).

In September 1994, the Solvies applied to the MPCA to add 640 animal units. Objections to the feedlot expansion were raised by township residents at town meetings and, in March of 1995 the township: (1) noted the residents' feelings that "the township needs to do whatever is necessary to monitor and control the pollution from large feedlots"; (2) passed a resolution containing restrictions on large feedlot operations; and (3) notified the Solvies that they needed to obtain a conditional use permit before they could expand the feedlot.

Township residents then filed a petition with the MPCA requesting that the MPCA prepare an environmental assessment worksheet (EAW) for the proposed expansion, and the township began the process of amending its comprehensive plan and zoning ordinance. In May 1995, the MPCA determined that an EAW was not needed and issued an interim permit to the Solvies. Subsequently, when the Solvies applied for an additional MPCA permit to construct and operate two more hog barns on section 4 of the township with an additional 1,892 animal units, the MPCA determined an EAW was necessary for both the section 22 and section 4 expansions.

On October 24, 1995, in its EAW, the MPCA concluded that an environmental impact statement was not needed, but indicated that the Solvies would be required to follow an odor management plan. On December 21, 1995, the MPCA granted permits to the Solvies for the expansion of their feedlot operations. On January 27, 1996, the township adopted a new zoning ordinance to impose certain setback requirements on feedlot facilities. This ordinance required the Solvies to apply for a variance and a conditional use permit to expand the feedlots.

The Solvies requested a variance and applied for a conditional use permit, and the township denied both requests. The Solvies filed suit challenging the validity of the township's ordinances and the denials of the variance and permit. The district court determined that because the township, through its zoning authority, sought to address the odor concerns of its residents, as opposed to pollution control, the ordinance was not preempted by or in conflict with state law, and the township properly exercised its land use authority in adopting the zoning ordinance. The district court further determined, however, that an ordinance provision deemed to be directed at water quality concerns was preempted by state law.

## ISSUES

Is the township ordinance preempted in whole or in part by state law?

Does the township ordinance conflict in whole or in part with state law?

Is the township ordinance supported by a rational basis?

## ANALYSIS

On appeal from summary judgment, a reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d

108, 112 (Minn.1992). In making its determinations, "the court must view the evidence in the light most favorable to the nonmoving party." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994). No deference need be given to the district court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Statutory interpretation presents a question of law that an appellate court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

## I.

■■■ Preemption is defined as the "occupying the field" concept in Minnesota. *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). If a state law fully occupies a particular field of legislation, there is no room for local regulation. *Id.* Even if a local ordinance does not duplicate or directly conflict with an explicit provision in state law, an attempt to impose additional regulation in that field is void. *Id.* This court examines four questions to determine whether a local ordinance is preempted:

(1) What is the subject matter being regulated?

(2) Has the subject matter been so fully covered by state law as to have become solely a matter of state concern?

(3) Has the legislature in partially regulating the subject matter indicated that it is a matter solely of state concern?

(4) Is the subject matter itself of such a nature that local regulation would have unreasonably adverse effects upon the general populace?

*Blue Earth County Pork Producers, Inc. v. County of Blue Earth*, 558 N.W.2d 25, 27 (Minn.App.1997), *review denied* (Minn. Mar. 26, 1997).

■■■ Under the first factor, the parties here disagree as to the subject matter that is being regulated. The Solvies argue that the township is inappropriately regulating pollution through its zoning ordinance. The township contends, and the district court agreed, that the ordinance addresses the concerns of township residents to minimize odor through zoning setback requirements. Specifically, the ordinance imposes setback requirements from an adjoining property line (200 feet), a township road (200 feet), and from any occupied residence (the greater of a quarter mile or of at least two feet for each animal unit). The district court reasoned that the ordinance does not regulate or impose additional requirements or costs on the management, operation, or business decisions of the feedlot. Rather, the ordinance was a valid exercise of the township's authority to regulate land use, crafted to lessen the impact of odor on township residents. We agree. Further, we note that to the extent the township intruded into pollution control issues, the district court properly determined a provision of the ordinance dealing with water pollution was preempted.

The Solvies argue that this court's decision in *Board of Supervisors v. ValAdCo*, 504 N.W.2d 267 (Minn.App.1993), *review denied* (Minn. Sept. 30, 1993), which struck down a township ordinance regulating feedlots, is controlling. We disagree. In *ValAdCo*, the challenged ordinance imposed waste application rates, setbacks for sewage lagoons, and a requirement for anyone who built a sewage lagoon to post a surety bond or cash. *Id.* at 270. This court, in determining that the ordinance was preempted by state laws concerning pollution, stated: "If every township were allowed to set its own pollution control conditions, the result could be a patchwork of different rules." *Id.* at 271.

In contrast, the ordinance here focuses on land use by regulating the location of feedlots and does not attempt to regulate the actual operation of feedlots. Additionally, when *ValAdCo* was decided, the MPCA had recommended setbacks from sewage lagoons that conflicted with the setbacks in the Crooks Township ordinance. *Id.* at 272. Subsequently, the MPCA has discontinued recommending setbacks as part of its odor management efforts. Finally, the issue of whether a township was impermissibly regulating pollution by addressing odor concerns was not directly before this court in *ValAdCo*. Accordingly, we conclude *ValAdCo* does not control our decision here.

Under the second and third factors, we must determine whether the subject matter is solely a matter of state concern. The Solvies assert that the state has indicated its intent to occupy the field of odor pollution, citing Minn.Stat. § 116.07, subd. 2 (1996) (defining MPCA duties to promote the reduction of all forms of pollution) and Minn. R. 7020.0100 (1997) (stating general purpose of MPCA to reduce air, water, and land pollution from feedlots). We disagree. Minn. Stat. § 116.07. subd. 2, requires the MPCA to adopt standards of air quality and to consider local zoning classifications. Likewise, Minn. R. 7020.0100 recognizes that local governments have the authority for providing "adequate land use planning for residential and agricultural areas."

The township ordinance at issue here establishes setback requirements to minimize the impact of odor on residents and does not establish air quality standards for feedlot odor. In addition, we note: (1) the MPCA has not adopted air quality standards for feedlot odor; and (2) the MPCA has no specific setback requirements for feedlots. Also, the MPCA has stated several times in the present case that local authorities have an important role in addressing feedlot odor concerns. Specifically, the MPCA informed the Solvies that: (1) the feedlot permit

does not exempt you from any permitting requirements the county or township may have. I recommend that you contact your local planning and zoning office to obtain any additional permits that may be required;

(2) the township may require a conditional use permit; and (3) "[a]ll zoning issues have to be handled by local units of government." Given the narrow purpose and scope of the ordinance, the lack of specific authority in state law, and the statements by the MPCA recognizing the land use authority of local governments, we cannot say the state has expressly or impliedly occupied the field of addressing concerns regarding odor from feedlots.

Under the fourth factor, we must examine whether a township's attempt to address the problem of feedlot odor would have an unreasonably adverse effect on the general populace. We conclude that it would not. Here, the township conducted a planning process and designed an ordinance utilizing local zoning provisions to address the specific concerns and odor tolerance levels of its residents. Addressing these concerns by exercising its acknowledged land use authority does not adversely affect the general populace of the state.

In conclusion, our review of the appropriate factors leads us to determine that the district court did not err in deciding that the New Prairie Township land use ordinance is not preempted by state law.

## II.

The doctrines of preemption and conflict "are distinct doctrines governed by different principles." *Blue Earth County Pork Producers*, 558 N.W.2d at 29. In determining whether an ordinance conflicts with a statute, the reviewing court examines the following principles:

"(a) As a general rule, conflicts which would render an ordinance invalid exist only when both the ordinance and the statute contain express or implied terms that are irreconcilable with each other.

(b) More specifically, it has been said that conflict exists where the ordinance permits what the statute forbids. * * *

(c) Conversely, a conflict exists where the ordinance forbids what the statute expressly permits. * * *

(d) It is generally said that no conflict exists where the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute."

*Northern States Power Co. v. City of Granite Falls*, 463 N.W.2d 541, 544–45 (Minn.App. 1990) (quoting *Mangold*, 274 Minn. at 352, 143 N.W.2d at 816–17), *review denied* (Minn. Jan. 14 & 24, 1991).

The Solvies argue that the township's ordinance is in conflict with state law because their MPCA permit, which includes an odor management plan, allows them to construct a facility that is prohibited by the township ordinance. We disagree.

The MPCA specifically informed the Solvies that the MPCA permit did not exempt them from local government permitting requirements. Further, the MPCA's odor management plan is different from the setback requirements of the ordinance. The management plan contains standards for storing, processing, monitoring, and applying manure. The plan also requires the Solvies to take wind patterns into account when determining where to locate the manure storage basins. In contrast, the township ordinance addresses the effect of odor on nearby residents by imposing setback requirements for the feedlot facility. Because the MPCA odor management plan and the township ordinance address separate and distinct aspects of feedlot odor, the plan and ordinance can be reconciled. *See, e.g., City of Minnetonka v. Mark Z. Jones Assoc., Inc.*, 306 Minn. 217, 220, 236 N.W.2d 163, 165 (1975) (stating that "it was the legislature's intent that the state code preempt the requirements for fire prevention except as they dealt with matters other than construction" and thus, local governments could establish other types of fire prevention measures not directly related to construction).

◼ The Solvies also assert that the ordinance conflicts with Minn.Stat. § 561.19, subd. 2(a) (1996) (concerning nuisance liability of agricultural operations) and other statutes that refer to Minnesota's general agricultural policies. *See* Minn.Stat. §§ 17.03, subd. 1 (1996) (stating that "[t]he commissioner shall encourage and promote the development of agricultural industries"); 17.138, subd. 3 (1996) (stating the commissioner "shall develop voluntary best management practices for odor control at feedlots"). After careful review, we conclude these statutes do not contain any specific provisions, such as setback requirements, that conflict with the ordinance to such an extent that would nullify the otherwise valid exercise of land use regulatory authority by a township.

## III.

◼ "As a legislative act, a zoning or rezoning classification must be upheld unless opponents prove that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare."

*Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414–15 (Minn.1981) (quoting *State by Rochester Ass'n of Neighborhoods v. City of Rochester*, 268 N.W.2d 885, 888 (Minn.1978)).

In other words, the test is a "rational basis" test. A city council has broad discretion in legislative matters, and even if the city council's decision is debatable, so long as there is a rational basis for what it does, the courts do not interfere.

*Id.* at 415.

◼ The Solvies claim the township has not provided a rational basis to justify its setback requirements for agricultural feedlots. We disagree. This court addressed a similar argument concerning a local ordinance in *Holt v. City of Sauk Rapids*, 559 N.W.2d 444, 445 (Minn.App.1997), *review denied* (Minn. Apr. 24, 1997). *Holt* involved a challenge to an ordinance aimed at problems caused by dogs where

testimony showed that dogs were the number one complaint at city hall and that the mayor initiated the ordinance to address problems with dog noise and dog odor.

*Id.* at 446. This court concluded:

It is at least debatable that limiting the number of dogs per residential unit is substantially related to controlling the problems of dog noise and odor, or to the health and general welfare of the community as affected by dogs.

*Id.*

Similarly, the record here shows that: (1) many township residents voiced strong complaints about the odor emanating from feedlots; (2) the township held meetings to address residents' concerns about feedlots; and (3) the ordinance enacted was designed to increase the distance between residences and the feedlot to minimize the impact of odor. Further, a township board member submitted an uncontroverted affidavit stating that in adopting the specific ordinance, the township held many public meetings, reviewed research articles, debated options, and relied on the expertise of its township board members who are farmers and residents in the county. Finally, we conclude the ordinance

is not unreasonable because it recognizes a feedlot owner's ability to purchase additional land, and therefore, the ordinance neither prohibits nor unreasonably limits the development or operation of feedlots in the township. Thus, on this record, we cannot conclude the district court erred in determining that there was a rational basis supporting the township ordinance.

## DECISION

The district court correctly determined that the township ordinance was not preempted by or in conflict with state law because: (1) the ordinance was a valid exercise of the township's land use authority designed to address odor problems by regulating the location of feedlots; and (2) the ordinance did not conflict with or intrude upon the state's pollution control efforts. Further, the township properly established a rational relationship between regulating the location of feedlots and addressing its residents' concerns regarding odor from feedlots.

**Affirmed.**