CITY OF MINNETONKA v.
MARK Z. JONES ASSOCIATES, INC.

236 N. W. 2d 163.

November 21, 1975—No. 44930.

*Carlsen, Greiner & Law, Peter F. Greiner,* and *John E. Rode,* for appellant.

*Carl F. Dever,* City Attorney, for respondent.

Heard before Otis, Kelly, Todd, Yetka, and Knutson, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

These proceedings have been brought by the city of Minnetonka to require appellant Mark Z. Jones Associates, Inc., to comply with provisions of the city's Fire Prevention Code in the construction of an apartment building in that municipality. Jones appealed to the commissioner of administration who held that the city was without authority to enforce the code because it had been superseded by the State Building Code. On appeal to the district court by Minnetonka, the decision of the commissioner

was reversed. The court held that the State Building Code does not preempt, conflict with, nor supersede the Minnetonka fire prevention ordinance, and directed Jones to comply. Jones has appealed that judgment and we reverse.

The parties have stipulated to the facts. Jones is an owner, developer, and general contractor who has constructed an apartment complex in Minnetonka known as Stratford Wood. It consists of two buildings, two stories in height, and a basement garage 800 feet in length which will accommodate 119 automobiles. One apartment contains 120 dwelling units and the other 135.

Pursuant to Minn. St. 471.62, Minnetonka has adopted by reference a fire prevention code promulgated by the American Insurance Association. L. 1971, c. 561, §§ 1 to 15, codified as Minn. St. 1971, §§ 16.83 to 16.866, authorized the commissioner of administration to promulgate and administer a State Building Code. The section here to be construed is § 16.851, which provides as follows:

"Effective July 1, 1972, the state building code shall apply state-wide and supersede and take the place of the building code of any municipality. Specifically, the code shall apply to any municipality which as of the effective date of this act has a building code and shall further apply to any municipality which chooses to adopt a building code thereafter. Said building code shall not apply to farm dwellings and buildings, except with respect to other state inspections required or other rulemaking authorized by Minnesota Statutes 1971, Section 104.05 as of the effective date of this act."

The issue is whether, construing the statute and the ordinance together, Jones may be required by Minnetonka to install an emergency electrical lighting system in hallways and exits independent of public utility power, and to install a sprinkler system in the basement garage. That issue is to be resolved by determination of whether fire prevention devices which are an integral part of the construction of the building are governed by the State

Building Code or may be dealt with by municipalities independent of the provisions of the State Building Code. We hold that insofar as local ordinances purport to adopt fire prevention measures which affect the design and construction of buildings, they are in conflict with the State Building Code which has preempted that field.

At the outset, we note that although the parties have stipulated that the Minnetonka ordinance requires the Stratford Wood project to provide a sprinkler system and emergency lighting, there is nothing in the Minnetonka code explicitly dealing with those subjects. Section 11.3 provides that hallways shall be kept adequately lighted at all times, and § 14.2 requires appropriate extinguishing appliances in multifamily houses which contain places of a generally hazardous nature. The fire marshal of Minnetonka has construed these provisions to require emergency lighting and a sprinkler system in the garages, and for the purposes of our decision we will accept his interpretation of the ordinance.

In reaching his decision, the commissioner of administration emphasized the fact that the requirements in the Minnetonka fire code directly affect building construction and have as their same purpose the health, safety, and welfare of the people referred to in the statute governing the State Building Code, and consequently by the terms of the statute are superseded.

The decision of the trial court hinged on the right of a municipality in the exercise of its police power to protect against the extreme hazards created by the storage of automobiles in an apartment complex.[1] In its memorandum the court pointed out that the state does not have firefighting equipment and that fire-

---

[1] Minnetonka argues that each of the 119 automobiles which the garage will accommodate contains a tank of gasoline, five tires, and other flammable materials capable of producing 412,000,000 British thermal units of heat. The sprinkler system the city requires would not extinguish a fire of this magnitude but would contain it from spreading.

fighting is a function of local government in discharging its duty to protect its residents. The court concluded that it was not the intention of the legislature to permit such hazards to remain unattended. We are of the opinion, however, that the State Building Code has dealt with fire prevention in a comprehensive manner insofar as it affects the construction and design of buildings, and that it was the legislature's intent that the state code preempt the requirements for fire prevention except as they dealt with matters other than construction. It would, undoubtedly, be within the province of local government to provide, by ordinance, fire prevention measures dealing with the use and storage of combustible materials, the number and location of portable fire extinguishers, limitations on occupancy of dwellings or commercial buildings, and similar regulations not directly related to the design or construction.

Although we decide the issues on a broader application of the doctrine of preemption, with respect to the sprinkler requirement in the basement garage appellant has made a persuasive argument that the State Building Code expressly exempts the garage area from a sprinkler requirement. Section 3802 of the Uniform Building Code as adopted by reference in State of Minnesota, Dept. of Administration, Minnesota Building Code, Reg. 201, contains the following provision:

"(b) WHERE REQUIRED. Standard automatic fire-extinguishing systems shall be installed and maintained in operable condition as specified in this Chapter in the following locations:

"1. In every story, basement or cellar of all buildings except Group I Occupancies when floor area exceeds 1500 square feet and there is not provided at least 20 square feet of opening entirely above the adjoining ground level in each 50 lineal feet or fraction thereof of exterior wall in the story, basement or cellar on at least one side of the building. Openings shall have a minimum dimension of not less than 30 inches. Such openings shall be maintained readily accessible to the Fire Department and

shall not be obstructed in a manner that fire fighting or rescue cannot be accomplished from the exterior."

Minnetonka argues that the mere fact that state does not require a sprinkler system does not foreclose the city from imposing stricter conditions. We do not agree.

The purposes of the statutes we here construe are set forth in unequivocal, unambiguous, and explicit terms in Minn. St. 16.83 as follows:

"Laws 1971, Chapter 561 is enacted to enable the commissioner of administration to promulgate and administer a state building code in accordance with the provisions hereof, which code shall govern the construction, reconstruction, alteration, and repair of state-owned buildings and other structures to which the code is applicable. It is necessary that building codes be adopted and enforced to protect the health, safety, welfare, comfort, and security of the residents of this state. However, the construction of buildings should be permitted at the least possible cost consistent with recognized standards of health and safety.

"Many citizens of the state are unable to secure adequate housing at prices or rentals which they can afford. Such a situation is contrary to the public interest and threatens the health, safety, welfare, comfort, and security of the people of the state. Other persons in commerce and industry are also affected by the high cost of construction. Construction costs for buildings of all types have risen and are continuing to rise at unprecedented rates.

"A multitude of laws, ordinances, rules, regulations, and codes regulating the construction of buildings and the use of materials therein is a factor contributing to the high cost of construction. Many such requirements are obsolete, complex, and unnecessary. They serve to increase costs without providing correlative benefits of safety to owners, builders, tenants, and users of buildings.

"It is the purpose of Laws 1971, Chapter 561 to prescribe and provide for the administration and amendment of a state code of building construction which will provide basic and uniform

performance standards, establish reasonable safeguards for health, safety, welfare, comfort, and security of the residents of this state who are occupants and users of buildings, and provide for the use of modern methods, devices, materials, and techniques which will in part tend to lower construction costs."

This statute leaves little doubt as to the purpose of L. 1971, c. 561, namely, to adopt a building code which will afford the public physical protection and, at the same time, abolish abuses occasioned by local ordinances which are "obsolete, complex, and unnecessary," and result in exorbitant costs. Most significantly, in our opinion, Minn. St. 16.85 directs the commissioner of administration to include fire protection along with health, sanitation, and safety as one of the objectives of the code. That section further directs the commissioner to consider existing statewide specialty codes and if necessary to adopt them by reference.

The critical section which here governs is § 16.851, quoted *supra.* In concluding that the State Building Code was intended to supersede local ordinances also affecting construction and design, notwithstanding such ordinances are intended as fire-prevention measures, we are influenced, if not governed, by the fact that the State Building Code itself deals extensively with fire prevention and fire-related safety measures. Chapter 38 of the Uniform Building Code includes almost nine pages of specifications with respect to mandatory fire-extinguishing systems. There are numerous standards for the use of fire-resistive materials in ceilings, floors, and exterior walls. As we have indicated, automatic sprinkler systems are extensively considered. Section 3312 of the Uniform Building Code provides for illuminated exit signs and § 3311 specifies fire-resistive materials for walls and ceilings of corridors. We are not persuaded that the legislature, in authorizing the State Building Code and providing that it should supersede all other building codes, was unmindful of the public's overriding concern for fire safety. The very purpose of the code as set forth in Minn. St. 16.83 is to protect the

"health, safety, welfare, comfort, and security of the residents of this state." No hazard is in greater need of attention than the hazard of fire in congested urban areas. It is difficult to conceive of any matter of public concern which should be given greater attention in the State Building Code than fire prevention. We therefore reject the argument that the legislature did not intend to preempt regulations dealing with fire prevention in authorizing the code. Nor are we persuaded that the enactment of L. 1974, c. 550, indicates a different intention. That statute authorizes the commissioner of public safety through the fire marshal to promulgate a uniform fire code. However, there is nothing in the statute to indicate either an intention to supersede local regulations or to deal with fire prevention in matters of building and construction. In any event, that code has not of this date been completed or released, and therefore we can draw no inferences concerning its impact on the matter before us.

One other matter deserves comment. It has been suggested by Minnetonka that local communities should be permitted to adopt more stringent fire-prevention measures than the State Building Code requires as a matter of public policy since municipalities and not the state have the direct responsibility for furnishing manpower and equipment to fight and contain such conflagrations when they occur. In this regard, it should be noted that Minn. St. 16.86, subd. 6, expressly provides for flexibility on a local level in the application of the State Building Code. Where local needs are not being met, the statute provides a procedure for adopting amendments affecting only municipalities which have problems peculiar to that locality.

By way of summary, we are of the opinion that to allow individual municipalities to impose additional burdens on builders in the name of fire prevention, sanitation, or security would totally emasculate the explicitly stated purpose of the statute authorizing the State Building Code. Accordingly, we reverse.

Reversed.