QUESTION: May a municipality lawfully enact an ordinance requiring contractors to pay a prevailing wage rate, including fringe benefits, on public works contracts let by the municipality?
SUMMARY: Pending legislative or judicial clarification, a municipality has the authority to enact an ordinance requiring contractors to pay a prevailing wage rate, including fringe benefits, on public works contracts let by the municipality. Section 215.19, F. S., provides in part that: (1)(a) Every contract in excess of $5,000 in amount to which the state, any county or municipality in the state, or any political subdivision of the state or other public agency or authority is a party which requires or involves the employment of free laborers, mechanics, or apprentices in the construction of any public building, or the prosecution and completion of any public work or for repairs upon any public building or public work, shall contain a provision that the rate of wages for all laborers, mechanics and apprentices, if such apprentices are available in the area in which the said public work is located, employed by any contractor or subcontractor on the work covered by the contract shall be not less than the prevailing rate of wages for similar skills or classification or work in the city, town, village or other civil division of the state in which the said public work is located, which provision shall refer to and incorporate this section in the contract by reference. A schedule of prevailing wages furnished by the Division of Labor, Department of Commerce, is required to be inserted into the specifications, and such schedule shall, for the purpose and duration of the contract, be deemed the prevailing wage rate as contemplated by this section regardless of any previous or subsequent determination. Section 215.19(1)(b), F. S. Every request for payment made by the contract on such project must contain an affidavit that all provisions of this section (i.e., s. 215.19, F. S.) have been complied with by the contractor and, to the best of his knowledge, by all of his subcontractors. Section 215.19(1)(c). Employers of apprentices on public works projects are required to file with the division at Tallahassee within 15 days from the date of employment the name, classification, and wage rate applicable to each apprentice employed on the job. Section 215.19(1)(d). The Division of Labor is required to make a continuing study to determine the prevailing wage rates of laborers, mechanics, and apprentices employed in work similar to that contemplated by s. 215.19 in the various parts of the state and shall furnish such schedule upon request. Section 215.19(2)(a). Prior to publication of invitations to bid, every public contracting authority in the state must notify the division of the nature and magnitude of the work and its location. Section 215.19(2)(b). The wage schedule must be posted on the job, and the contractor shall mail to the division in Tallahassee an affidavit stating that the notice has been posted and is being maintained. Section 215.19(2)(c). Section 215.19(3)(a)-(e) sets forth a detailed procedure for handling grievances of laborers who allegedly have not been paid the prevailing wage and for investigations into allegations regarding noncompliance with the act and disposition of disputes by the division. Section 215.19(8) makes the knowing violation, by a contractor or subcontractor, of the provisions of s. 215.19 or of a lawful order or rule of the contracting authority or of the Division of Labor authorized by said act a misdemeanor of the second degree. Additionally, the Division of Labor is required to include in its legislative budget request the estimated amounts needed for administering the provisions of this section, and the Legislature shall appropriate such amounts as it deems necessary for this purpose. Section 215.19(7). It cannot be disputed that the City of Miami, as a municipal corporation, has the authority under its police powers to regulate in the area of minimum wages. West Coast Hotel Company v. Parrish, 300 U.S. 379 (1937). The question then becomes: To what extent was that authority proscribed, restricted, or abrogated by the enactment of s. 215.19, F. S., Florida's Prevailing Wage Law? While in some jurisdictions the answer to this question would involve simply an analysis of s. 215.19, in order to determine whether this statute constitutes a legislative preemption of the field in Florida, other factors must be considered: Among these, the constitutional and statutory relationship existing between Florida's municipalities and the state, the legislative intent surrounding the enactment of s. 215.19, and the purpose to be served by such legislation. When considering issues of preemption and state power vis-a-vis municipal regulation, the courts have generally followed two lines of reasoning. On one hand, a number of states have adopted a traditional preemption view which entirely prohibits municipal regulation of a subject area which has been found to be preempted to the state. See Wholesale Laundry Board of Trade, Inc. v. City of New York, 234 N.Y.S.2d 862 (1962). A general statute dealing with state functions applicable statewide cannot be changed by the enactment of a local law. See City of Utica v. Mercon,336 N.Y.S.2d 880, 882 (N.Y.Sup.Ct. 1972); City of Minnetonka v. Mark Z. Jones Assoc., 236 N.W.2d 163 (Minn. 1975). Underlying these cases is the presumption that the state is sovereign and the municipalities possess only such powers as are clearly conferred upon them by law. See Greene v. City of Winston-Salem,213 S.E.2d 231 (N.C. 1975). The validity of municipal enactments is dependent upon their not being inconsistent with any general law of the state. City of Utica, supra. Until recently, it could be persuasively argued that Florida, notwithstanding s. 2(b), Art. VIII, State Const., was among those states which adopted a restrictive view toward the existence of municipal powers. For example, early Florida cases repeatedly stress that municipalities, as creatures of the Legislature, may exercise only such powers as are conferred by express or implied provisions of law, and all doubts as to the existence of a power in a municipality are resolved against the city. See State ex rel. Friaz v. Burr, 84 So. 61 (Fla. 1920); Town of Bithlo v. Bank of Commerce, 110 So. 837 (Fla. 1926). See also City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla. 1972); Rinzler v. Carson, 262 So.2d 661 (Fla. 1972). On the other hand, a more flexible view of municipal powers has been formulated which generally forbids municipal regulation only when an ordinance seeks to prohibit that which a statute expressly permits. No conflict would be found where an ordinance merely seeks to supplement the burdens imposed by the statute, provided the additional burdens are logically consistent with the statutory purpose. See City of Indianapolis v. Sablica, 342 N.E.2d 853 (Ind. 1976); City of Baltimore v. Sitnick, 255 A.2d 376 (Md. 1969); County Council v. Montgomery Assoc. Inc. 333 A.2d 506 (Md. 1975). It has been stated in reference to the subject of municipal ordinances that, as a general proposition, additional regulation to that of the state law does not constitute a conflict. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith. See American Nat'l Bldg. and Loan Assoc. v. Mayor and City Council, 224 A.2d 883 (Md. 196l), citing 37 Am. Jur. Munic. Corp. s. 156. This view of municipal powers has been referred to as the doctrine of "concurrent powers" and is utilized as an alternative to the doctrine of preemption by occupation when warranted. As stated in American Nat'l, supra, at 887, It would appear that the tests of general law were devised not to draw an impermeable line between the authority of the City and the State, but rather to merely define the inclusive limits of the state's powers. "General" under this test merely means that the subject is of sufficient statewide effect to give the State authority to legislate. It does not mean that it is not of significant local effect to give the city at least concurrent power to legislate. . . . This doctrine was initially formulated in Maryland, which, like Florida, possesses constitutional and statutory "home-rule" provisions which seek to assure to municipalities and/or counties "the power of self-government and freedom from interference by the legislature in the exercise of that power." City of Baltimore v. Sitnick, supra, at 379. Maryland, like Florida, found it necessary to delegate to political subdivisions the power to enact local laws in order to reduce the "log-jam" of local bills which occurred during the legislative session and to permit local legislation to be enacted by those directly affected by it without interference by representatives from other sections of the state. Florida's Municipal Home Rule Powers Act, s. 166.021, F. S., has been said to constitute a legislative recognition that the powers of municipalities are derived directly from the Constitution. City of Temple Terrace v. Hillsborough Ass'n of Retarded Citizens,322 So.2d 571, 576 (2 D.C.A. Fla., 1975), aff'd, 332 So.2d 610 (Fla. 1976). Chapter 166, F. S., is an attempt to return as broad a control as possible over municipal governmental matters directly to the municipalities. The provisions of s. 166.021 are to be construed so as to secure for municipalities the broad exercise of home-rule powers granted by the Constitution. Thus, in light of s. 2(b), Art. VIII, State Const., and s. 166.021, the continued validity of the Florida cases cited, infra, which adopted a restrictive view of municipal powers is highly questionable. Instead, Florida would appear to be among those states, such as Maryland, which do not resolve conflicts between the state and its political subdivisions on the sole basis of preemption but instead look also to the purpose of the local regulation in light of the home-rule powers possessed by municipalities. Cf. City of Temple Terrace, supra, at 577. The payment of prevailing wages would appear to be an area in which uniformity would be neither desired nor required and which, of necessity, would vary greatly among the various parts of the state. An ordinance which requires the payment of fringe benefits on public works projects let by a municipality would foster the same purpose as does s. 215.19, F. S., namely, to prohibit the payment of substandard wages, thereby depressing the labor market. The higher cost of living in an urban area and the more severe substandard housing and construction problems could justify additional municipal regulation on the basis that the state and municipality might act concurrently on the subject matter. See City of Baltimore v. Sitnick, supra, at 384. Certainly, local elected officials are aware of the unique conditions within their municipalities and should be given broad leeway to act on behalf of the people they represent when the subject is one which is suited to decentralized control and when the Legislature has not forcibly expressed a strong intent to occupy the entire field. Additionally, prevailing wage provisions are to be liberally construed to effectuate their purpose, namely, to protect government employees from substandard earnings by fixing a floor under wages on government projects. Walker v. County of Los Angeles, 361 P.2d 247 (Cal. 1961); O. G. Sansone Co. v. Department of Transportation, 127 Cal.Rptr. (Ct.App.2d 1976). In certain areas, any local regulation would obviously run counter to the clear legislative purpose of the enactment. See, e.q., County Council v. Montgomery Assoc. Inc., 333 A.2d 596 (Md. 1975). This does not, however, appear to be the case regarding ordinances defining the prevailing rate of wages to be paid on public works projects within a municipality. Section 215.19, F. S., does not expressly prohibit the payment of fringe benefits on public works projects. The Prevailing Wage Law prohibits the payment of not less than the prevailing rate of wages on such projects. Thus, while the Legislature has required that a certain prescribed minimum wage be paid on such projects, it has not expressly prohibited municipalities, pursuant to their home-rule powers, from adding to this minimum requirement if local conditions and the purpose of the law are best served by such action. While the Legislature has not required municipalities without local ordinances regulating this subject to pay fringe benefits, see AGO 074-200, neither has it expressly prohibited municipalities which desire to enact such legislation from so proceeding. While it is obviously impossible to state definitely which position the Florida courts would adopt regarding this question, I am inclined to the view that, pending legislative or judicial clarification, the municipalities may enact local ordinances which require the payment of fringe benefits on municipal public works projects in keeping with the intent of the Municipal Home Rule Powers Act, the purposes to be served by enactment of prevailing wage laws, as well as recent Florida decisions which indicate a significant shift in favor of local control over subjects of legitimate local concern and away from a restrictive sovereign preemption view.