## BUILDERS ASSOCIATION OF MINNESOTA, Appellant,

v.

## CITY OF ST. PAUL, Respondent.

### No. A11-2270.

Court of Appeals of Minnesota.

July 23, 2012.

 

 

 

 

 

 

 

 

 

 

Joseph G. Springer, Fredrikson & Byron, P.A., Minneapolis, MN, for appellant.

Sara R. Grewing, St. Paul City Attorney, Judith A. Hanson, Assistant City Attorney, St. Paul, MN, for respondent.

Considered and decided by CLEARY, Presiding Judge; STAUBER, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Appellant Builders Association of Minnesota (BAM) challenges the district court's grant of summary judgment in favor of respondent City of St. Paul. BAM argues that the district court erred as a matter of law in determining that the state building code did not preempt the city's promulgation of a uniform egress-window policy. We agree, and reverse and remand for entry of judgment in favor of BAM.

## FACTS

The facts underlying this case are undisputed. In April 2009, the city's Department of Safety and Inspections adopted a "Uniform Egress Window Policy" in a memorandum addressed to St. Paul homeowners and interested citizens. The policy was not enacted or adopted by the city council. It purports to resolve the confusion between "various code requirements for egress windows." It notes the distinct hazard to life and safety posed by noncompliant egress windows.

The policy itself requires replacement egress windows to conform to a minimum size. The sole exception to the minimum-size requirement is for windows installed before the policy's effective date. The policy provides an avenue for appeal to the city council, and requires the council to consider in any appeal the effect on affordable housing, "provided that the spirit of the code is complied with and public safety is secured."

BAM is a nonprofit trade association whose members are involved in the residential construction and remodeling industry. Some of its members perform residential remodeling work in St. Paul. The

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

city's egress-window policy had a detrimental economic impact on BAM members' businesses. Following the policy's adoption, some homeowners were reluctant to replace egress windows due to the added expense involved in resizing window frames and rough openings to comply with the city's policy.[1]

BAM brought this action seeking (1) a declaratory judgment recognizing that the state building code preempts the city's egress-window policy, and (2) an injunction prohibiting the city from enforcing the policy. The parties filed cross-motions for summary judgment. In the memorandum supporting its motion, the city argued that BAM lacked standing to sue. The district court entered an order recognizing BAM's standing, concluding that because its members had suffered concrete economic injury, BAM has associational standing.

The district court subsequently granted summary judgment in favor of the city. It concluded that (1) the state building code did not preempt the city's egress-window policy because the preemption statute applied only to municipal ordinances and development agreements, not to policies; (2) the policy conformed to the egress-window requirements set forth in the state fire code; and (3) any conflict between the state building code and the state fire code was best left to the legislature or rulemaking authorities to resolve. This appeal followed.

## ISSUES

I. Does BAM possess associational standing to bring suit challenging the city's policy?

II. Was BAM required to exhaust administrative remedies before bringing suit?

III. Does the state building code preempt the city's attempt to adopt a "Uniform Egress Window Policy" that differs from the state building code?

## ANALYSIS

### I.

■■■ On appeal, the city argues in a footnote that BAM lacks standing to bring this action. A challenge to standing implicates the validity of the cause of action itself. *State ex rel. McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 850 (Minn.1985). The issue may therefore be raised at any time. *In re Horton*, 668 N.W.2d 208, 212 (Minn.App.2003). Because standing is a question of law, we review the district court's determination de novo. *Schiff v. Griffin*, 639 N.W.2d 56, 59 (Minn.App.2002).

■■■ The doctrine of standing requires a party to demonstrate a "sufficient stake in a justiciable controversy to seek relief from a court." *Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn.2007). To establish standing, a party must have suffered "some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *In re Crown CoCo, Inc.*, 458 N.W.2d 132, 135 (Minn.App.1990) (quotation omitted). The injury must be traceable to the challenged action, and it must be capable of being redressed in court. *Id.* Economic injury may be sufficient to establish standing, so long as it is not abstract or speculative. *State v. Knutson*, 523 N.W.2d 909, 911 (Minn.App.1994), *review denied* (Minn. Jan. 13, 1995); *Byrd v.*

---

1. A "rough opening" is the framed area into which a window assembly is installed. Increasing the rough opening involves more labor, time, and expense than merely replacing the window itself.

*Indep. Sch. Dist. No. 194,* 495 N.W.2d 226, 231 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993).

■ An organization can assert standing if its members' interests are directly at stake or if its members have suffered an injury-in-fact. *State ex rel. Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 497–98 (Minn.1996); *Minneapolis Fed'n of Teachers, Local 59 v. Special Sch. Dist. No. 1,* 512 N.W.2d 107, 109 (Minn.App. 1994), *review denied* (Minn. Mar. 31, 1994). Here, BAM submitted evidence that its members had suffered economic detriment as a direct result of the city's egress-window policy. One of BAM's members, the president of a remodeling business, attested to his company's loss of revenue as a result of the policy because customers decided not to replace their egress windows when they learned of the extra time and expense involved in complying with the city's policy. And as a number of BAM's members offered remodeling services in St. Paul, the policy directly affected their interests as well. Thus, because BAM's members suffered economic injuries, BAM itself derived associational standing to bring the action. The district court did not err in determining that BAM has standing.

## II.

■ The city also argues that BAM should have first challenged the policy through administrative channels. The district court apparently accepted this argument, concluding that BAM "should take the matter up with either the legislature or the rulemaking body that interprets the legislation—DOLI [the Department of Labor and Industry] in this case." Although not explicitly, this conclusion appears to address exhaustion of administrative remedies.

■ Like standing, the exhaustion doctrine implicates a party's ability to seek relief in court and may be raised at any time. *See Nw. Airlines, Inc. v. Metro. Airports Comm'n,* 672 N.W.2d 379, 381–82 (Minn.App.2003) (addressing whether the failure to exhaust remedies deprives a court of subject matter jurisdiction), *review denied* (Minn. Feb. 25, 2004). Whether the exhaustion doctrine applies is a determination of law, which this court reviews de novo. *Modrow v. JP Food-serv., Inc.,* 656 N.W.2d 389, 393 (Minn. 2003).

■ When seeking an injunction against an administrative agency, a party must first exhaust administrative remedies unless those remedies are "inadequate or nonexistent." *Zaluckyj v. Rice Creek Watershed Dist.,* 639 N.W.2d 70, 74 (Minn. App.2002), *review denied* (Minn. Apr. 16, 2002); *accord Uckun v. Minn. State Bd. of Med. Practice,* 733 N.W.2d 778, 785 (Minn. App.2007). The city contends that because the commissioner of the state Department of Labor and Industry has final interpretive authority over the state building code, BAM should have first sought redress from the commissioner before bringing suit. *See generally* Minn.Stat. § 326B.127, subd. 5 (2010) (establishing commissioner's interpretive authority). The city also relies on a statute that authorizes the commissioner to administer and enforce the state building code, particularly when municipalities fail to properly do so. *See generally* Minn.Stat. § 326B.121, subd. 3 (2010) (authorizing commissioner to administer and enforce the state building code).

Here, however, the dispute does not primarily concern the administration or enforcement of the state building code. Rather, it centers on whether the egress-window provisions of the state building code "trump" broader provisions in the state fire code and, if so, whether the state

building code also preempts the city's egress-window policy. Although these questions require interpreting the state building code, they also necessitate interpreting the city's policy and the state fire code, neither of which fall within the commissioner's interpretative authority. Thus, no adequate administrative remedies were available for BAM to pursue. To the extent the district court determined that BAM failed to exhaust available administrative remedies, it erred as a matter of law.

## III.

BAM argues that the district court erred in granting the city summary judgment based on the court's conclusion that the state building code did not preempt the city's egress-window policy. Summary judgment is appropriate when (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law. *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008). "When summary judgment is granted based on application of the law to undisputed facts," as here, we review the district court's legal conclusion de novo. *Id.*

### A. Conflict between state building code and state fire code

Pursuant to its delegated authority, in 2007 the Department of Labor and Industry adopted the 2006 International Building Code, the 2006 International Residential Code, and the 2006 International Fire Code, subject to certain amendments.[2] *See* Minn.Stat. §§ 326B.02, subd. 6, .106,

subd. 1 (2010) (delegating rulemaking authority to the commissioner of labor and industry); Minn. R. 1305.0011 (2011) (adopting international building code), 1309.0010 (2011) (adopting international residential code), 7511.0090 (2011) (adopting international fire code); 32 Minn. Reg. 7, 10, 12 (2007). The legislature's express purpose for adopting a statewide building code was to "provide basic and uniform performance standards, [and] establish reasonable safeguards for health, safety, welfare, comfort, and security of the residents of this state." Minn.Stat. § 326B.101 (2010). It also sought to foster construction "at the least possible cost consistent with recognized standards of health and safety." *Id.*

The state building code sets forth minimum sizes and requirements for installing egress windows. Int'l Bldg. Code § 1026.2–.3 (Int'l Code Council 2006); Int'l Res. Code § R310.1 (Int'l Code Council 2006). However, when the responsible department adopted the building code, it also adopted a state-specific amendment to the minimum-size requirements for certain egress windows. Minn. R. 1309.0310 (2011), 32 Minn. Reg. 13 (2007). This amendment provides that when egress windows are *replaced* in certain residential dwellings, the replacement windows must be the largest size that will fit into the *existing* frame or rough opening. *Id.* The amendment thus creates an exception to the minimum-size requirements by permitting homeowners to replace existing egress windows without having to increase the size of the frame and rough opening,

---

**2.** The International Building and Residential Codes have both been incorporated into the state building code by reference. Minn. R. 1305.0011 (building code) (2011), 1309.0010 (residential code) (2011). The term "state building code" therefore refers to the International Building Code and the International Residential Code, subject to the exceptions, amendments, and qualifications to those codes as set forth in the administrative rules. *See generally* Minn. R. chs. 1300, 1309 (2011) (amending certain provisions of the International Building and Residential Codes).

thereby avoiding substantial additional expense. It is undisputed that the city's policy did not contain this crucial exception to the minimum-size requirements.

Similarly, although the state fire code provides the same basic size requirements for egress windows as the building code, it does *not* contain the exception for replacement windows. *See* Int'l Fire Code § 1026.2–.3 (Int'l Code Council 2006). As a result, the two codes appear to conflict with regard to the exception for replacement egress windows. In an attempt to resolve this conflict, the district court concluded that the policy did not violate state law because it implemented the requirements set forth in the fire code.

██ Canons of statutory construction lead us to the opposite conclusion.[3] The legislature has provided that "[w]hen a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both." Minn.Stat. § 645.26, subd. 1 (2010). When provisions of law irreconcilably conflict, the more particularized provision takes precedence over the general. *Id.; Ford v. Emerson Elec. Co.*, 430 N.W.2d 198, 200 (Minn.App.1988), *review denied* (Minn. Dec. 16, 1988). These canons ensure that all provisions of law are effective, and none are unnecessary or incapable of execution. *See* Minn.Stat. § 645.17 (2010) (noting that courts may presume "the legislature intends the entire statute to be effective and certain").

Here, the statutory language indicates that the state-specific exception in the building code for replacement egress windows is controlling. The implementing statute for the state fire code prohibits municipalities from enacting fire-prevention standards that "exceed the applicable requirements of the State Building Code." Minn.Stat. § 299F.011, subd. 4 (2010). The state fire code's absolute minimum-size requirements for egress windows exceed those in the state building code because they are more restrictive. Thus, municipalities are expressly precluded from adopting regulations that omit the exception for replacement egress windows.

Additionally, the amendment to the state building code is more particularized than the fire code, as it carves out an exception to the general rules regarding minimum egress-window sizes.[4] Accordingly, the exception in the building code for replacement windows must take precedence over municipalities' enactments of the absolute requirements set forth in the state fire code. A contrary interpretation would result in the exception having no effect.

The intent of the responsible department in adopting the egress-window exception also supports according it preclusive effect. The department, in a division opinion, stated that the rulemaking committee did not consider adopting an absolute minimum size for replacement win-

---

3. The canons of statutory construction also apply to administrative rules. Minn.Stat. § 645.001 (2010).

4. The provisions of the International Residential Code incorporated into the state building code also have a more narrow application: they apply only to certain dwellings of no more than three stories in height. *See* Minn. R. 1300.0040 (2011) (setting forth the scope and applicability of different provisions of the state building code). By contrast, the state fire code applies more generally to "[s]tructures, facilities and conditions." Minn. R. 75.11.0102, subp.1 (2011). As the replacement-window exception applies to certain dwellings covered by the more specific scope of Minn. R. ch. 1309, its application is more particularized than the general requirements set forth in the state fire code. *See* Minn. R. 1309.0310 (carving out an exception for only certain buildings).

dows because the exception was intended to encourage residents to replace old or inoperable windows. The department thus implicitly recognized that the exception promotes the goals of safety and fire prevention, thereby advancing the purpose of the state building code to lower construction costs while protecting the health and safety of residents. *See* Minn.Stat. § 326B.101 (stating the legislature's purpose for establishing a state building code).

 The city argues that the state fire code, and not the building code, governs in this case because the fire code applies to "[e]xisting structures, facilities and conditions that, in the opinion of the [state fire marshal], constitute a distinct hazard to life and property." Minn. R. 7511.0102, subp. 1 (2011); *see* Minn.Stat. §§ 299F.01, .011 (2010) (designating state fire marshal as responsible code official). But the state building code does *not* exempt from its application those structures deemed to constitute a hazard in the opinion of the state fire marshal. To the contrary, its application is extremely broad. *See* Minn. Stat. § 326B.121, subd. 1(a) (Supp.2011) (setting forth code's broad application); Minn. R. 1300.0040 (2011) (establishing that the building code "applies to the construction, alteration, moving, demolition, repair, and use of any building, structure, or building service equipment in a municipality," apart from certain exceptions that are not relevant here). The legislature expressly provided that the state building code "is the standard that applies statewide for the construction, reconstruction, alteration, and repair of buildings and other structures of the type governed by the code." Minn.Stat. § 326B.121, subd. 1(a). Moreover, the purpose of the building code is, in part, to ensure reasonable safeguards for the health and safety of residents. Minn.Stat. § 326B.101. In enacting the state building code and requiring it to supersede all other building codes, the legislature was mindful of the overriding public concern for fire prevention and safety. *City of Minnetonka v. Mark Z. Jones Assocs.*, 306 Minn. 217, 222–23, 236 N.W.2d 163, 167 (1975). As a result, the state fire code does not supersede the building code, even with regard to those requirements that the state fire marshal deems necessary to ensure a minimum level of fire prevention.

Because the state building code takes precedence over the fire code with regard to the exception for replacing egress windows, the district court erred in concluding that the city's policy did not violate state law because it implemented the fire-code requirements.

## B. Preemption of municipal regulations

BAM argues that the district court erred in concluding that the state building code did *not* preempt the city's policy. The crux of the district court's decision is that the state building code preempts only municipal ordinances and development agreements, and because the city's policy was neither of those things, it was not preempted.

 Municipalities possess only those powers expressly conferred by statute and those necessary to carry out their express authority. *Mangold Midwest Co. v. Vill. of Richfield*, 274 Minn. 347, 357, 143 N.W.2d 813, 820 (1966). Among other powers, they may enact ordinances and regulations to promote the health, safety, and welfare of residents. Minn.Stat. §§ 410.07, 412.221, subd. 32 (2010). However, the state may "limit the power of a city to act in a particular area," for example by fully occupying a field of legislation and preempting local regulation in that field. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 6 (Minn.2008).

█ The legislature's purpose in enacting the state building code was to set forth a uniform standard for the construction, reconstruction, alteration, and repair of buildings throughout the state. Minn.Stat. §§ 326B.101, .121, subd. 1(a); *see also City of Morris,* 749 N.W.2d at 7 (recognizing the purpose of a uniform, statewide building code). Prior to its adoption, municipalities enforced a wide range of building code requirements, resulting in confusion and increased construction costs. *See* 1971 Minn. Laws ch. 561, § 1, at 1018–19 (noting multiplicity of local rules that increased construction costs). Accordingly, the legislature enacted a preemption provision that [subject to certain caveats which are not relevant here] limits the authority of municipalities to enact differing building code requirements. This provision states that "[a] municipality must not by ordinance, or through development agreement, require building code provisions regulating components or systems of any structure that are different from any provision of the State Building Code." Minn.Stat. § 326B.121, subd. 2(c) (2010). It further provides that "[t]he State Building Code supersedes the building code of any municipality." *Id.,* subd. 1(b) (Supp.2011).

█ The Minnesota Supreme Court has established a three-part test for applying this preemption provision. *City of Morris,* 749 N.W.2d at 7. The state building code preempts municipal regulation when "(1) the [municipal] ordinance is a building code provision; (2) it regulates a component or system of a residential structure; and (3) it is different from a provision of the State Building Code." *Id.*

█ The city and district court agree that if the egress-window policy were an ordinance or development agreement, the state building code would expressly preempt it. The policy regulates a component of a residential structure (egress windows), and it differs from the state building code as it does not contain the exception for replacement windows. The dispute thus centers on the first prong: whether the policy constitutes a building code provision.

The supreme court has broadly defined "building code provision" to encompass any regulation that "affects the construction and design of buildings" if the subject of the regulation is covered by the state building code. *Id.* at 8 (quotation omitted). Thus, in *City of Morris,* the supreme court held that a rental-licensing ordinance imposing requirements for egress-window covers was a building code provision because its subject—egress windows—was covered by the state building code. *Id.* at 12. Similarly, in *City of Minnetonka,* the supreme court held that the state building code preempted a local fire-code provision that imposed certain lighting and sprinkler requirements that differed from the state building-code provisions. 306 Minn. at 218–19, 223, 236 N.W.2d at 164–65, 167. But as both of those cases dealt with ordinances, and not policies, they are not squarely on point.

The distinction between an ordinance and the challenged policy in this case is a matter of semantics, not substance. By its express terms, the state building code preempts not only ordinances and policies, but also "the *building code* of any municipality." Minn.Stat. § 326B.121, subd. 1(b) (emphasis added). The statute does not define the terms "ordinance" and "building code." We must therefore look to their ordinary and customary meaning. *See State v. Taylor,* 594 N.W.2d 533, 535 (Minn.App.1999) ("A court construes technical words in a statute according to their technical meaning and other words according to common and accepted usage."). An ordinance is commonly defined as an "authoritative law or decree," especially "a

municipal regulation." *Black's Law Dictionary* 1208 (9th ed.2009); *see also The American Heritage Dictionary* 1274 (3d ed.1992) (defining "ordinance" as "[a]n authoritative command or order," or "[a] statute or regulation, especially one enacted by a city government"). Similarly, the term "building code" commonly means a "law or regulation setting forth standards for the construction, maintenance, occupancy, use, or appearance of buildings and dwelling units." *Black's Law Dictionary, supra,* at 222.

The city's policy fits both of these definitions. The city does not dispute that the policy has the force of law. Although termed a "policy" and set forth in a memorandum rather than a more formal codification, the policy is essentially a municipal regulation that sets forth legally enforceable requirements for egress windows. Its practical effect would be the same whether put in place as an ordinance or a policy: under either form, St. Paul residents cannot take advantage of the replacement-window exception allowed by the state building code.

The city's argument centers on the fact that the policy was promulgated by the director of the city's Department of Safety and Inspections, and not by the official lawmaking body (the city council). However, the city council delegated to the director the authority to prescribe "rules and regulations as deemed necessary for the proper operation of the department." St. Paul, Minn., Admin. Code § 13.01(d) (2007). The policy's authority thus ultimately flows from the city council. Regardless of its form, the policy is, at bottom, a municipal rule or regulation.

■ Recognizing the policy for what it is—a municipal regulation subject to preemption—advances the purpose of the state building code. As noted above, the code's preemption provisions reflect a core legislative purpose to avoid the proliferation of local building codes and regulations. *City of Morris,* 749 N.W.2d at 7. If cities could so easily enact their own building codes by simply delegating authority to another official and calling their regulations "policies," the purpose of enacting a uniform state code would be subverted. Moreover, by enacting such policies, cities could evade the scrutiny of public hearings and the vetting process involved in adopting formal codes. The city cannot indirectly accomplish through a "policy" what it is precluded from accomplishing through an ordinance.

In sum, the state building code preempts the city's policy regulating egress window sizes. The policy functions as a building code regulation, and it differs from the state building code. Accordingly, we conclude that the district court erred as a matter of law in granting summary judgment in favor of the city.

### DECISION

The state building code preempts the city's attempt to impose differing requirements for egress window sizes. The city may not avoid the preemption provisions of the state building code by terming its regulation a "policy" rather than adopting it through formal enactment. BAM is therefore entitled to summary judgment as a matter of law.

**Reversed and remanded.**